In re the MARRIAGE OF Dorothy Ann MULVIHILL, Appellant-Petitioner,

and

John Timothy Mulvihill, Appellee-Respondent.

No. 3–1283 A 391.

Court of Appeals of Indiana, Third District.

Nov. 26, 1984.

William J. Cohen, Elkhart, for appellant-petitioner.

Robert D. Lee, South Bend, for appellee-respondent.

STATON, Presiding Judge.

On December 9, 1982, the marriage of Dorothy and John Mulvihill was dissolved and their property distributed between them. This appeal concerns the trial court's treatment of John's employment retirement plan (hereinafter referred to as the HR–10 plan). Dorothy raises the following issues:

I. Did the trial court properly exclude from the total amount of money in the HR–10 plan $35,000 which John allegedly received from his father under an oral trust for John's siblings?

II. Did the trial court abuse its discretion by subtracting John's tax liability from the amount in his HR–10 plan to arrive at a valuation of the plan?

We affirm.

## I.

### Oral Trust

Dorothy contends that the $35,000 which John had placed in his HR–10 plan was marital property. She asserts that there was no oral trust between John and his father and that even if there was it is void under IC 1972, 30–4–2–1 (Burns Code Ed.). John contends that Michigan law, which recognizes the validity of oral trusts, should govern because the trust was created in Michigan. We need not determine this conflicts of law issue because John failed to comply with the Uniform Judicial Notice of Foreign Law Act (UJNFLA).

Pursuant to the UJNFLA, John was required to give reasonable notice to Dorothy that he intended to offer evidence of the law in Michigan:

"Evidence of laws in other jurisdictions...

Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise."

IC 1973, 34–3–2–4 (Burns Code Ed.). Even though John had filed a post-trial brief on

oral trusts citing only Indiana law, it was not until 19 days after the trial that John first suggested that Michigan law should apply to the issue of the oral trust. According to Indiana law, John's post-trial attempt to use Michigan law was too late. *Jameson Chemical Co., Ltd. v. Love* (1980), Ind.App., 401 N.E.2d 41, 44–5, *modified on other grounds*, Ind.App., 403 N.E.2d 928; *Ingleheart Bros. v. John Deere Plow Co.* (1943), 114 Ind.App. 182, 185, 51 N.E.2d 498, 499.

■ The record shows that no pretrial motions or pleadings cite Michigan law. Further, John made no attempt at trial to introduce evidence of Michigan law nor did he request the trial court to take judicial notice of it. As stated above, it was not until approximately three weeks after trial when John submitted his reply brief that any reference was made to the laws of Michigan. A very similar fact situation was addressed by this Court in *Jameson, supra:*

> "We can find no indication in the record presented to us that either party gave reasonable notice of intent to prove the law of another state or to ask the court to take judicial notice of that law. No attempt was made at trial to offer evidence of the law of another state, nor was the trial court requested to take judicial notice of such other law. None of the pleadings or pretrial motions cites the law of another state. It was not until 15 days after the trial when the parties submitted their proposed 'Findings of Fact and Conclusions of Law' that any reference was made to the laws of Michigan or Ohio. Furthermore, all case law cited in the appellate briefs is from Indiana courts, and all citations to the UCC come from either the Indiana Code or West's Uniform Laws, Annotated.

In *Ingleheart Bros. v. John Deere Plow Co.* (1943) 114 Ind.App. 182, 51 N.E.2d 498, a creditor brought an action for conversion against the vendee of certain crops, on which the debtor-vendor had executed to the creditor a chattel mortgage. The Appellate Court noted that the conditional sale contracts entered into by the creditor and debtor gave the creditor certain rights under the law of Illinois, and that it appeared that the parties intended that the laws of Illinois should govern the contracts. Nonetheless, with regard to the UJNFLA, the Appellate Court held as follows:

> ' "The law of Illinois was neither pleaded nor proven, nor were any steps taken to require the court to take judicial notice of the law of that state in accordance with the provisions of Burns' 1933, § 2–4801, et seq., and it will therefore be presumed that the common law, as interpreted and applied in this state, prevails there. * * * " '

114 Ind.App. at 185, 51 N.E.2d at 499.

Similarly, we hold that because the provisions of the UJNFLA were not followed here, we will apply the laws of Indiana and of the United States to the case at bar. Therefore, we need not decide which state's law would otherwise apply under IC 26–1–1–105. It is incumbent upon litigants to properly and timely raise a choice of law question in the trial court."

*Id.* at 44–5. Therefore, John's noncompliance with the UJNFLA requires us to follow *Jameson* and apply the laws of Indiana to the issue of the oral trust.

In 1971, the Indiana legislature extended the requirement of a writing to validate a trust of personal property:

> "30-4-2-1 [31–1401]. Formal requirements.—(a) A trust in either real or personal property is enforceable only if there is written evidence of its terms bearing the signature of the settlor or his authorized agent.
>
> (b) Except as required in the applicable probate law for the execution of wills, no formal language is required to create a trust, but its terms must be sufficiently definite so that the trust property, the identity of the trustee, the nature of the trustee's interest, the iden-

tity of the beneficiary, the nature of the beneficiary's interest and the purpose of the trust may be ascertained with reasonable certainty. [IC 1971, 30–4–2–1, as added by Acts 1971, P.L. 416, § 3, p. 1910]."

IC 1972, 30–4–2–1 (Burns Code Ed.)

 An oral trust of personal property created before 1971 can be sustained by oral evidence if the proof is clear and distinct. *Costa v. Costa* (1953), 124 Ind.App. 128, 134, 115 N.E.2d 516, 519:

"Courts generally hold that to sustain a trust relation by oral evidence that the proof thereof must be clear and distinct; that it must be shown whether the trust is expressed, resulting or constructive and that the standard of evidence for such purpose is a superior measure of proof. The evidence must be higher in quality to substantiate the same—that is, in clearness, fulness and persuasiveness . . .

In order to successfully prove the existence of a trust by parol evidence alone, it must appear that such evidence adduced at the trial is not compatible with any other result."

*Id.* Even though John testified that he and his father created the oral trust for John's siblings in 1971 or 1972, he did state in interrogatories that the trust was created in 1970. Considering the evidence most favorable to the trial court, we must view the trust as having been created in 1970. The trial court made the following findings of fact:

"The husband's father entrusted the husband with $35,000.00 which is to be used by the husband in case of their need for the benefit of a brother and a sister of the husband. Because the husband has applied his spendable income and assets to family purposes and has incurred indebtedness fluctuating in amount but at separation in the amount of approximately $78,000.00 to the same purpose but in contrast has segregated and separately maintained the $35,000.00 in a manner inconsistent with his use of his own funds and consistent with a use

intended for the benefit of persons other than members of his immediate family, meaning his wife, himself, and his children, the Court finds as a fact that this $35,000.00 is impressed with a trust and that this fund is held by the husband in accordance with the trust. This $35,000.00 is not a marital asset."

The record supports the trial court's finding that $35,000 within John's HR-10 plan was in trust for John's siblings. The trial court did not abuse its discretion in finding an oral trust and in withholding it from marital property.

## II.

### Tax Deduction

 In fashioning its decree the trial court was guided by IC 1976, 31–1–11.5–11 which requires the distribution of marital property to be made in a "just and reasonable manner." *DeMoss v. DeMoss* (1983), Ind.App., 453 N.E.2d 1022, 1024. At the appellate level, we review the trial court's property distribution only for an abuse of discretion. There is, however, a strong presumption that the trial court complied with the statute, and we will reverse its judgment only where we find it to be clearly against the logic and effect of the evidence and reasonable inferences drawn therefrom. *Id.* Furthermore, even though the evidence might justify a different result, we will not substitute our judgment for that of the trial court. *Id.*

The deduction of tax liability from the amount in John's HR–10 plan was not an abuse of discretion. In *Burkhart v. Burkhart* (1976), 169 Ind.App. 588, 349 N.E.2d 707, this Court upheld the trial court's decision not to deduct the amount of tax liability from the pre-tax stock value to determine the actual value of the marital asset awarded to the husband. *Id.* 169 Ind.App. at 593, 349 N.E.2d at 711. It reasoned that a tax deduction was improper because there was not a foreseeable need or requirement to liquidate the stock to comply with the property settlement. *Id.* This lack of a mandatory transfer, it stated, created no assurance that the tax would

ever have to be paid. *Id.* In addition, the Court noted that approximately two thirds of the stock was restricted from liquidation. *Id.* For these reasons, the Court found no abuse of discretion in the trial court's decision to disallow the tax deduction to determine the value of the marital asset. *Id.* It did note, however, that tax consequences should not be ignored. *Id.*

■ It was under an abuse of discretion standard that this Court in *Burkhart* affirmed the trial court's decision to disallow the tax deduction to determine the value of a marital asset. Our standard of review on the trial court's allowance of the tax deduction is also for an abuse of discretion. Our reading of the record does not allow us to find such an abuse of discretion.

Unlike Burkhart, John will at some point in his life realize tax consequences on his HR–10 plan unless he dies before retirement or before disability arises. The record supports the allowance of a tax deduction figured at the ordinary income rate in a 50% tax bracket. Therefore, the trial court did not abuse its discretion in allowing the tax deduction from John's HR–10 plan.

Affirmed.

RATLIFF, J., (by designation) concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I agree with the majority that the court did not abuse its discretion in its treatment of the potential tax liability attending the husband's HR–10 plan.

I also agree that pursuant to IC 34-3-2-4 and *Jameson Chemical Co., Ltd. v. Love* (1980), Ind.App., 401 N.E.2d 41, Indiana law should be applied in determining the validity of the trust involving the $35,000 placed with the husband by his father.

My point of departure is the majority's ensuing determination that the father created a valid oral trust under Indiana law despite the provisions of IC 30-4-2-1 (which requires written evidence signed by the settlor or his agent). While the majority correctly points out that in *Costa v.*

*Costa* (1953), 124 Ind.App. 128, 115 N.E.2d 516 this court acknowledged that oral trusts created prior to 1971 might remain valid, its language was quite restrictive. I believe the majority unnecessarily and unwisely relaxes those strictures today.

The learned trial judge determined that these funds were "impressed with a trust." As set forth in Section 411, Restatement of Trusts (Second):

"Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality."

The section of the Restatement correctly sets forth the law of Indiana. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221; *Colbo v. Buyer* (1956), 235 Ind. 518, 134 N.E.2d 45; *Koehler v. Koehler* (1919), 75 Ind.App. 510, 121 N.E. 450.

In the present case, finding a resulting trust fits the facts in evidence, the language employed by the court, and the law of this state. Upon that basis I agree the judgment should be affirmed.